# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, **Luis Polo**, being duly sworn, do hereby depose and state the following:

1.      I am a Border Patrol Agent with the United States Border Patrol and have been so employed since March 27, 2006.  As a Border Patrol Agent, I have gained experience in conducting investigations related to the illegal entry of aliens into United States.  I attended the Federal Law Enforcement Training Center at Artesia, New Mexico, where I received training for the purpose of accomplishing my Border Patrol duties, which includes training in immigration related law and matters.  Furthermore, I also receive training on a continuing basis for the purpose of maintaining my proficiency pertaining to Border Patrol work.

2.      This Affidavit is made in support of a Criminal Complaint against **Camilo MIESES-GUERRERO** based on violation of **Title 8, Title _8_, _United States Code_,** Section 1326(a) & (b)(1) – Reentry of Removed Aliens subsequent to a felony conviction.

3.      I make this affidavit based on my own personal knowledge and on oral and written reports by other federal, state, and/or local law enforcement agents and officers that investigated this matter.  This affidavit does not contain all the information derived from this

1

investigation only that which is sufficient to demonstrate probable cause to believe that a crime has been committed.

## PROBABLE CAUSE

4.      On or about Thursday, August 21, 2025, at approximately 05:00p.m., United States Border Patrol (USBP) Ramey Sector Dispatch received information from the United States Coast Guard (USCG) Sector San Juan indicating about the detection, of a Surface Target of Interest (STOI) traveling on a south-easterly direction, approximately sixty (60) nautical miles north of Isabela, Puerto Rico.

5.      United States Coast Guard Cutter Joseph Doyle was diverted in order to attempt to conduct an intercept.

6.      In addition, Customs & Border Protection Caribbean Air & Marine Branch, Puerto Rico Police Department (FURA) were notified.

7.      STOI's position was re-acquired by CBP Air Asset, located and identified the same vessel at approximately twenty-three (23) nautical miles north of Isabela, Puerto Rico, still heading southbound straight to Puerto Rico.

8.      Once the vessel and heading were confirmed, CBP-Marine Interdiction Agents (MIA) / Marine Patrol Units obtained visual of the vessel and proceeded to approach for inspection.

9.      During the approach, CBP-MIA described the vessel as a yawl style home made vessel, with one outboard engine.

10.      CBP-MIA activated their vessel's emergency lights and sirens and initiated an attempt to stop the go-fast yawl type vessel. The vessel failed to heave commands to stop and attempted to abscond.

11.     As a pursuit ensued, CBP-MIA observed when crewmembers of the yawl type go-fast vessel jettisoned several packages into the sea.

12.     After several hours of pursuit at sea, CBP-MIA were able to disable the go-fast yawl type vessel's engine, and arrest four (04) male subjects.  This was in the early morning of 22 August 2025.

13.     CBP-MIA were not able to retrieve any of the jettisoned packages.  Preliminary field interview of all four (04) subjects, revealed that they were all possibly citizens and nationals of the Dominican Republic.  The yawl type vessel sank possibly because of taking too much water during the pursuit.  Several fuel containers were observed both inside of the yawl type vessel during, and after the pursuit.

14.     CBP-MIA final interdiction took place at approximately three (03) nautical miles from Camuy, Puerto Rico.

15.     USBP took custody of the intercepted four (04) subjects.  USBP Border Patrol Agents (BPA) identified themselves as immigration officers and proceeded to interview all subjects, including **MIESES-GUERRERO**.

16.     BPAs questioned all subjects, including **MIESES-GUERRERO**, as to their citizenship and nationality.

17.     All subjects, including **MIESES-GUERRERO**, freely and voluntarily admitted to being unlawfully present in the United States.

18.     All subjects, including **MIESES-GUERRERO**, admitted being citizens & nationals of the Dominican Republic.

19.     All subjects, including **MIESES-GUERRERO**, were arrested and transported to U.S. Border Patrol Ramey Station in Aguadilla, Puerto Rico for further investigation, processing

and removal proceedings.

    20.    Once at Ramey Station, all subjects, including **MIESES-GUERRERO** photograph & fingerprints were taken and entered to different law enforcement database systems. Record checks revealed and confirmed that **MIESES-GUERRERO** possesses prior immigration history.

    21.    As to **MIESES-GUERRERO's** immigration & criminal history:

    (a)    On May 05, 2016, at approximately 12:00a.m., **MIESES-GUERRERO** was encountered at sea, upon being intercepted by PRPD-FURA one (01) nautical mile near the naval communications antenna in Aguada, Puerto Rico; illegally attempting to enter the United States transporting Dominican Republic nationals on a vessel towards Puerto Rico.

    (b)    On June 02, 2016, an Immigration Judge Order of Removal was issued against **MIESES-GUERRERO**.

    (c)    On July 05, 2016, **MIESES-GUERRERO** was officially and physically deported / removed from the United States to the Dominican Republic from the Port of Miami, Florida.

    (d)    On March 20, 2018, **MIESES-GUERRERO** was once again encountered for a second time, upon being intercepted at sea with fifteen (15) Dominican Republic migrants, ten (10) nautical miles of Aguada, Puerto Rico.

    (e)    On March 22, 2018, **MIESES-GUERRERO** was processed for Reinstatement of a Prior Order of Removal.

    (f)    **MIESES-GUERRERO** was also prosecuted and charged with Title 8 U.S.C. 1326(a) – Reentry of Removed Alien.

4

(g)     On August 13, 2018, **MIESES-GUERRERO** was convicted & sentenced to a probation term of three (03) years for a violation of Title 8 U.S.C. 1326(a), which is a felony.

(h)     On September 18, 2018, **MIESES-GUERRERO** was officially & physically removed, for a second time, from the United States to the Dominican Republic from the Port of Miami, Florida.

(i)     On November 28, 2021, **MIESES-GUERRERO** was intercepted at sea by USCG, six (06) nautical miles southwest oof the coast of Mona Island, while transporting thirteen (13) Haitian migrants to be dropped off at Mona Island, Puerto Rico.

(j)     On December 01, 2021, a Removal Order was issued against **MIESES-GUERRERO.**

(k)     **MIESES-GUERRERO** was prosecuted for illegal re-entry.

(l)     On April 11, 2022, **MIESES-GUERRERO** was convicted & sentenced to Time Served & a supervised release term of three (03) years.

(m)     On May 04, 2022, **MIESES-GUERRERO** was physically removed for a third time, from the United States to the Dominican Republic from the Port of San Juan, Puerto Rico.

22.     Border Patrol Agents advised **MIESES-GUERRERO** of his right to legal representation and his right to speak with the Consular Officer of his native country, the Dominican Republic.

**23.**     **MIESES-GUERRERO** re-entered and/or attempted to re-enter the United States at a place other than a designated Port of Entry after being convicted of a felony.

5

24.    **MIESES-GUERRERO** is a national and citizen of the Dominican Republic who does not possess any immigration documents allowing him to enter and/or remain in the United States legally, to include but not limited, the lack of express consent from the Attorney General of the United States, or his successor, the Secretary of the Department of Homeland Security, to reapply for admission into the United States.  Furthermore, **MIESES-GUERRERO** was not inspected, admitted, or paroled into the United States by an Officer of the Bureau of Customs and Border Protection.

25.    **MIESES-GUERRERO** does not have any petitions pending with the Bureau of Citizenship & Immigration Services.

26.    Based upon my training, experience, and participation in other investigations, and based on the facts revealed in this investigation, I believe that sufficient probable cause exists to demonstrate the commission of a violation of federal law by the above-mentioned subject, to wit, a violation of **Title 8, Title 8, _United States Code_, Section 1326(a) & (b)(1) – Reentry of Removed Aliens subsequent to a felony conviction.**

Luis Polo
Border Patrol Agent

Subscribed and Sworn pursuant to FRCP 4.1 at 9:48 a.m. by telephone, this 29th day of August 2025.

Digitally signed by
Hon. Giselle López-Soler

Honorable Giselle López-Soler
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF PUERTO RICO

6